UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DANIEL ADAMS,                        )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        1:10-cv-00146-JAW
                                     )
UNIVERSAL UNDERWRITERS               )
INSURANCE COMPANY,                   )
                                     )
            Defendant.               )


**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Following a default judgment in a personal injury suit between the Plaintiff and a third-party towing company, the Plaintiff seeks proceeds from the towing company's insurer under Maine's reach and apply statute, 24-A M.R.S. § 2904, common law breach of contract, and the Declaratory Judgment Act, 14 M.R.S. § 5951 *et seq*. The parties cross-move for summary judgment, primarily contesting whether the insurer's notice of cancellation to the towing company effectively canceled its insurance policy before the Plaintiff's accident. The Court concludes that cancellation was effective and grants the insurer's and denies the Plaintiff's motion for summary judgment.

I.    **STATEMENT OF FACTS**

      A.    **Procedural History**

On March 21, 2010, Daniel Adams filed with the Maine Superior Court, Penobscot County, Maine, a three count complaint against Universal Underwriters Insurance Company (Universal) claiming compensation under Maine's "reach and

apply" statute, 24-A M.R.S. § 2904 (Count I), breach of contract (Count II), and seeking a declaratory judgment (Count III).[1] *Notice of Removal* (Docket # 1) Attach. 1 (*Compl.*) at 2–4. On April 20, 2010, Universal removed the case to federal court. *Notice of Removal.*

On September 17, 2010, Universal moved for summary judgment on all counts. *Def.'s Mot. for Summ. J.* (Docket # 13) (*Def.'s Mot.*). Mr. Adams responded and, in the same filing, moved for summary judgment on Count I. *Pl.'s Resp. to Def.'s Mot. for Summ. J. and Mot. for Summ. J.* (Docket # 17) (*Pl.'s Resp. and Mot.*). Universal filed a consolidated reply and response in opposition to Mr. Adams' motion. *Def.'s Reply Mem. in Support of its Mot. for Summ. J. and Mem. in Opp'n to Pl.'s Mot. for Summ. J.* (Docket # 18) (*Def.'s Reply and Resp.*). Mr. Adams replied to Universal's opposition. *Pl.'s Reply Mem. to Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J.* (Docket # 21) (*Pl.'s Reply*).

### B. Facts[2]

On or about July 1, 2007, Universal issued a "Unicover" insurance policy to KDT Towing & Repair, Inc. (KDT). *Def.'s Statement of Material Facts* ¶ 1 (Docket # 14) (DSMF); *Pl.'s Resp. to Def.'s Statement of Material Facts and Statement of Additional Material Facts* ¶ 1 (Docket # 16) (PRDSMF). Although KDT made payments on a Universal policy effective from July 1, 2006 to July 1, 2007, it paid no premiums on the policy effective July 1, 2007. DSMF ¶ 2; PRDSMF ¶ 2.

---

[1] Mr. Adams later amended the Complaint without objection, naming as defendant Universal rather than its corporate parent, Zurich Insurance Company. *Pl.'s Unopposed Mot. to Amend* (Docket # 2); *Order* (Docket # 5); *Am. Compl.* (Docket # 6).

[2] For purposes of Mr. Adams' motion, he was content to rely on the statement of material facts proposed by Universal in its motion and his response to that statement.

Universal set about the task of cancelling the policy due to non-payment of premium. On August 8, 2007, Universal sent a notice to KDT by certified mail, return receipt requested, cancelling the policy for nonpayment of premiums. DSMF ¶ 3; PRDSMF ¶ 3. The notice stated that termination would be effective as of August 21, 2007. DSMF ¶ 3; PRDSMF ¶ 3. The parties dispute whether the United States Postal Service (USPS) issued a certificate of mailing confirming that the cancellation notice was sent on August 8, 2007. DSMF ¶ 4; PRDSMF ¶ 4. More precisely, Mr. Adams does not deny that the USPS issued a certificate of mailing but asserts that "[t]here is insufficient proof" of any such certificate." PRDSMF ¶4. The cancellation notice was delivered and the certified mail receipt was signed by a KDT representative on August 13, 2007. DSMF ¶ 5; PRDSMF ¶ 5.

On February 22, 2008, Mr. Adams sustained an injury caused by an employee of KDT. DSMF ¶ 6; PRDSMF ¶ 6. On July 7, 2008, Mr. Adams filed suit against KDT for negligence in the Kennebec County Superior Court, and on February 10, 2010, the Superior Court issued a default judgment against KDT for $175,718 plus interest and costs. DSMF ¶¶ 7–9; PRDSMF ¶¶ 7–9. Mr. Adams' civil action seeks to recover that judgment against Universal.

### C. The Arguments

#### 1. Universal Underwriters' Summary Judgment Motion

Universal moves for summary judgment on all three of Mr. Adams' causes of action. As regards Counts II and III—breach of contract and declaratory judgment, respectively—Universal says that "[s]ince Mr. Adams is not a party to the KDT

policy, he is not in privity of contract and, therefore, does not have standing to bring claims for breach of contract or for a declaratory judgment with respect to that policy." *Def.'s Mot.* at 3. As regards Count I, Maine's reach and apply statute, Universal says that the "[t]he absence of coverage is a complete defense," and asserts that Universal cancelled the policy under which Mr. Adams seeks payment either as of August 21, 2007 or August 23, 2007. *Id.* at 4–5.

Pressing the earlier date of cancellation, Universal points to 24-A M.R.S. § 2908(5)[3] :

> Cancellation or nonrenewal is not effective until notice is received by the insured as follows.
>
> > A. . . . cancellation may not be effective prior to 10 days after receipt by the insured of a notice of cancellation. . . . The notice must state the effective date of and the reason or reasons for cancellation.
> >
> > . . .
> >
> > C. A post-office certificate of mailing to the named insured at his last known address is conclusive proof of receipt of notice on the 3rd calendar day after mailing.

*Def.'s Mem.* at 4. Universal says that, in accordance with subsection C, the USPS certified the mailing on August 8, 2007, providing conclusive proof of KDT's notice three days later on August 11, and satisfying the ten-day cancellation window before cancellation on August 21. *Id.* at 4–5

---

[3] In its motion for summary judgment, Universal cites section 2909 but quotes section 2908(5). *Pl.'s Mot.* at 4. It cites section 2908(5) in its reply and response. *Def.'s Reply and Resp.* at 2. The Court presumes that the reference to section 2909 is a typographical error.

Universal argues that even lacking "conclusive proof" through a certificate of mailing, the certified mail receipt signed by a KDT representative demonstrates actual notice to KDT. *Id.* at 5. Although the later notice date compresses the cancellation window to fewer than ten days, in Universal's view, cancellation would not be voided entirely but merely extended to August 23—ten days after KDT's actual receipt of notice. *Id.* In support, Universal asserts that "[a] majority of courts have held that a cancellation notice which mistakenly provides for fewer days' notice than required by statute is not void, but is to be read as if the notice stated the proper date allowed by statute." *Id.*

Universal contrasts the statute's use of the word "until" with the Maine Supreme Judicial Court's use of the term "unless." Here, the statute provides that cancellation is not effective "until" receipt of notice. *Id.* at 6. Citing *Maine Bonding & Casualty v. Knowlton*, 598 A.2d 749 (Me. 1991), Universal says that even though the Law Court views "unless" as mandating strict statutory compliance in order to effect a policy cancellation, the statute's use of "until" allows cancellation to be delayed. Universal points out that *Knowlton* cites *Ophus v. Tri-State Insurance*, 392 N.W.2d 653 (Minn. App. 1986), where in a similar context, a Minnesota court distinguished between "unless" and "until." *Id.* at 8–9. *Id.*

## 2. Mr. Adams' Opposition and Summary Judgment Motion

Mr. Adams opposes Universal's summary judgment motion and moves for summary judgment as to Count I of his Complaint. *Pl.'s Resp. and Mot.* at 1. He argues that Universal's insurance policy had not been cancelled as of February 22, 2008, the date of his injury. *Id.* at 2. Challenging Universal's assertion that

cancellation was effective on August 11, 2007, Mr. Adams highlights what he says is the absence of conclusive proof of receipt of the notice. *Id.* at 3. First, Mr. Adams says that the conclusive proof provision in subsection C does not apply to certified mail notices, as was the case here. *Id.* He offers the affidavit of Kevin Taylor, a USPS Head Window Clerk, who explains that a certificate of mailing is not issued for certified mail. *See* PRDSMF Attach. 1 ¶ 7 (*Aff. of Kevin Taylor*). In Mr. Adams' estimation, since a certificate of mailing is not issued for certified mail, and since certified mail establishes the delivery date, subsection C "was only intended to establish a presumed date of receipt where a receipt date could not otherwise be proven." *Pl.'s Resp. and Mot.* at 4. Mr. Adams reasons that "the statute did not intend to allow insurers to rely on subsection C to establish a different delivery date than that proven by a certified mail receipt." *Id.*

Second, Mr. Adams says that even if subsection C applies, Universal has not satisfied its burden since "1) Defendant has not provided proof of a 'Post Office Certificate of Mailing' that would satisfy the statutory requirements, and 2) even if it is accepted that KDT received the cancellation notice on the third calendar day after mailing, KDT still was not provided 10 days prior to the stated cancellation date." *Id.* at 4–5. As regards the former, Mr. Adams focuses on Form 3877, a document proffered by Universal to demonstrate conclusive proof of receipt. *See* DSMF Attach. 2 at 5; Mr. Adams says that Universal failed to show that Form 3877 "is a 'post-office certificate of mailing' within the meaning of 24-A M.R.S.A. § 2908(5)(C)," and he points to the absence of an affixed stamp or an official date on,

or any explanation of who filled out the form. *Pl.'s Resp. and Mot.* at 5–6. As regards the length of the period prior to cancellation, Mr. Adams argues that, even assuming KDT received notice of cancellation on August 11, 2007, it did not receive ten days notice because "[i]f one assumes KDT received the notice during the day on August 11, 2007, the amount of time that elapsed between the date of receipt and cancellation was somewhere between 9 and 9.5 days." *Id.* at 7.

Mr. Adams finally rejects Universal's assertion that a policy cancellation mistakenly providing less than ten days notice becomes effective once the statutory period has run. In Mr. Adams' view, "[w]hen an insurance company provides an insured with a shorter notice of cancellation than required by statute, the notice is rendered ineffective and the policy remains in effect." *Id.* at 8. He dismisses cases on which Universal relies as "not on point." *Id.* at 9. Specifically, he targets Universal's reliance upon *Knowlton*, concluding that "the *Knowlton* court did not say that a different result would be reached if the operative word in the cancellation statute was *until*," and asserting that the *Knowlton* Court's citation of *Ophus* is of minimal value because in the later case of *Jorgenson v. Knutson*, 662 N.W.2d 893 (Minn. 2003), the Minnesota Supreme Court came to the opposite conclusion. *Id.* at 9–10.

### 3. Universal Underwriters' Reply and Opposition

In its reply and opposition, Universal takes issues with Mr. Adams' argument that Universal has not provided conclusive proof of KDT's receipt of notice. *Def.'s Reply and Resp.* at 2–4. Universal says that Mr. Adams "has *admitted* in his

responsive statement of facts that Universal Underwriters sent the notice on August 8, 2007," and that, in accordance with Universal's understanding of the statute, it delivered the cancellation notice to the USPS on August 8, 2007, as demonstrated by Form 3877. *Id.* at 3 (emphasis in original). It rejects as lacking support Mr. Adams' contention that subsection C does not apply to notices sent by certified mail and that the certificate of mailing offered by Universal is not the proper form since "the statute does not require a particular form of certificate of mailing." *Id.* at 4. It notes that in *Lewis v. GEICO General Insurance Co.*, 600 F. Supp. 2d 220 (D. Me. 2009), Judge Singal accepted a version of Form 3877 as the statutory certificate of mailing. *Id.* Citing Rule 6, Universal says that Mr. Adams' argument that notice on August 11 did not give ten days notice "simply does not add up." *Id.* (citing FED. R. CIV. P. 6).

Turning to its argument that a shortened notice period merely delays, but does not invalidate a cancellation notice, Universal contends that "Mr. Adams has not come up with a single case from any jurisdiction where the court found that a cancellation statute using the word 'until' . . . invalidated a cancellation notice that was received fewer than the required number of days before the cancellation date." *Id.* It reiterates that "courts interpreting cancellation statutes using the term 'until' . . . uniformly have held that a cancellation notice with the wrong date is *not* void." *Id.* at 5 (emphasis in original).

### 4.    Mr. Adams' Reply

As regards Form 3877, Mr. Adams views Universal as attempting to have it both ways, "arguing that a certificate of mailing need not be on any particular form to fall within the meaning of 24-A M.R.S. § 2908(5), but the mere fact that a Form 3877 was used in this case establishes the existence of a certificate of mailing." *Pl.'s Reply* at 2. Mr. Adams presses his earlier argument that even if Form 3877 can be statutorily viewed as a certificate of mailing, "the Form 3877 produced by the Defendant in this case was not properly established with an appropriate evidentiary foundation . . . [and] does not establish the existence of a certificate of mailing within the meaning of the statute." *Id.*

Mr. Adams restates his view that "when an insurer provides an insured with a shorter notice of cancellation than required by statute, the notice is ineffective and the policy remains in effect." *Id.* at 3. He again rejects Universal's reliance on *Knowlton*, and concludes that "there is simply no support in the legislative history of the cancellation statute that supports a distinction being made between 'unless' and 'until.'" *Id.* at 4.

## II.   ANALYSIS

### A.   The Summary Judgment Standard[4]

Summary judgment is appropriate "if the movant shows that there is no

---

[4] On December 1, 2010, while these motions were pending, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective. *See Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011). Applying the amended version of Rule 56 to this case is "just and practicable" and would not "work a manifest injustice" because the amendments "do not change the summary judgment standard or burdens." *Id. See also Tropigas de Puerto Rico, Inc. v. Certain Underwriters At Lloyds Of London*, No. 10-1122, 2011 WL 834072, at *2 n.5 (1st Cir. Mar. 2011) (stating that "[t]he substantive standard for summary judgment remains unchanged"); *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 n.4 (1st Cir. 2011) (same); *Del Toro Pacheco v. Pereira*, 633 F.3d 57, 62 n.6 (1st Cir. 2011) (same); *Hartford Fire Ins. Co. v. CAN Ins. Co. (Eur.)*, 633 F.3d 50, 54 n.6 (1st Cir. 2011) (same).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[W]here the parties filed cross-motions for summary judgment, as they did here, [the Court] must determine based on the undisputed facts whether either the plaintiff[] or the defendant[] deserve[s] judgment as a matter of law." *Hartford Fire Ins. Co.*, 633 F.3d at 53. A fact is "material" if it "has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995); *accord Buchanan v. Maine*, 469 F.3d 158, 166 (1st Cir. 2006); *Seaboard Sur. Co. v. Town of Greenfield*, 370 F.3d 215, 218–19 (1st Cir. 2004). An issue is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *McCarthy*, 56 F.3d at 315 (quoting *United States v. One Parcel of Real Prop. with Bldgs., Appurtenances, and Improvements, Known As Plat 20, Lot 17, Great Harbor Neck, New Shoreham, Rhode Island*, 960 F.2d 200, 204 (1st Cir. 1992)); *accord Seaboard Sur. Co.*, 370 F.3d at 218–19. Once this evidence is supplied by the moving party, the nonmovant "must point to 'competent evidence' and 'specific facts' to stave off summary judgment." *Tropigas de Puerto Rico, Inc.*, 2011 WL 834072, at *3; *accord ATC Realty, LLC v. Town of Kingston*, 303 F.3d 91, 94 (1st Cir. 2002).

The Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas de Puerto Rico, Inc.*, 2011 WL 834072, at *2

(quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009); *Carroll v. Xerox Corp.*, 294 F.3d 231, 236–37 (1st Cir. 2002). Rather, the non-moving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll*, 294 F.3d at 237 (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)). The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons, Ltd.*, 632 F.3d at 35; *accord Merchs. Ins. Co. of N.H., Inc. v. United States Fid. & Guar. Co.*, 143 F.3d 5, 7 (1st Cir. 1998).

## B. Counts II and III: Privity of Contract and Declaratory Judgment

Mr. Adams' Count II alleges breach of contract and Count III seeks a declaratory judgment that "Defendant is obligated to indemnify KDT Towing & Repair, Inc., for losses suffered by Plaintiff . . . ." *Am. Compl.* at 4. Universal argues that "[s]ince Mr. Adams is not a party to the KDT policy, he is not in privity of contract and, therefore, does not have standing to bring claims for a declaratory judgment with respect to that policy." *Def.'s Mot.* at 3. In his Response to Universal's motion for summary judgment, Mr. Adams elected to concentrate solely on the applicability of 24-A M.R.S.A. § 2904 and did not respond to Universal's arguments concerning Counts II and III. *Pl.'s Resp. and Mot.* at 1–12. By failing to respond to Universal's motion on these points, Mr. Adams waived the right to challenge a judgment in Universal's favor on these counts. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) ("[I]ssues adverted to . . . in a

perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned") (internal punctuation and citations omitted). Nevertheless, in an excess of caution, the Court addresses Universal's contentions regarding Counts II and III.

Universal's Statement of Fact number 1 states that "[o]n or about July 1, 2007, Universal Underwriters issued a "Unicover" insurance policy . . . to KDT Towing & Repair, Inc. . . . ." DSMF ¶ 1. Because Mr. Adams admitted this fact, PRDSMF ¶ 1, the Court accepts that the insurance contract was between Universal and KDT alone. Maine law is clear: Mr. Adams cannot maintain a breach of contract or related declaratory judgment action against Universal based on an insurance contract to which he was never a party. *See Tungate v. Gardner*, 2002 ME 85, ¶¶ 7–8, 797 A.2d 738, 741 ("[I]t is 'proscribed practice in Maine to bring a direct action against an insurance company in a negligence case prior to final judgment, the only remedy being found in the "Reach and Apply" statute.'" (quoting *Allen v. Pomroy*, 277 A.2d 727, 730 (Me. 1971))); *Poisson v. Travelers Ins. Co.*, 139 Me. 365, 31 A.2d 233, 234 (1943) ("There is no privity of contract between the plaintiff . . . and the [defendant] which issued a liability policy to the [insured company]. If the proceeds of the policy can be reached by the plaintiff, it is only by virtue of statutory authority or by express provision of the policy"); *Colby v. Preferred Accident Ins. Co. of N.Y.*, 134 Me. 18, 20, 181 A. 13, 14 (1935) ("As a general rule, one who suffers injury which comes within the provisions of a liability insurance policy, is not in privity of contract with insurer, and cannot reach the

proceeds of the policy for the payment of his claim by an action directly against insurer, unless such recovery is permitted by statute, or by the express provisions of the policy" (citation omitted)).

## C.    Count I:  Maine's Reach and Apply Statute

Universal asserts, and Mr. Adams does not deny, that "[t]he absence of coverage is a complete defense for the insurer" in claims brought under Maine's reach and apply statute.  *Def.'s Mot.* at 4.  The Court agrees that Mr. Adams cannot sustain a claim under Maine's reach and apply statute if KDT was not insured by Universal at the time of the accident.[5]  *See, e.g., Colony Ins. Co.*, 2010 WL 5036797, at *3; *Knight v. Me. Mut. Fire Ins. Co.*, 651 A.2d 838, 839 (Me. 1994) ("The reach and apply statute requires both a notice and coverage in order for a judgment creditor to have insurance money applied to satisfy a judgment"); *Hunnewell*, 588 A.2d at 302 ("Under the statute, the insured must first establish coverage").

The parties' legal jousting centers around two issues:  first, whether certified mail is statutorily the same as a certificate of mailing such that it provides conclusive proof of receipt of notice under 24-A M.R.S. § 2908(5)(C); and second,

---

[5] Strictly speaking, the absence of coverage is not a defense to be proven by the insurance company; instead, the existence of insurance coverage is a prerequisite for invocation of the statute that must be proven by the plaintiff and may be challenged by the insurance company. *See Colony Ins. Co. v. Danly, Inc.*, Civil No. 10-308-P-H, 2010 WL 5036797, at *3 (D. Me. Dec. 9, 2010) (noting that the Maine Law Court has confirmed that "[t]he only defenses to a reach and apply action are those contained in section 2904" (quoting *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 20, 905 A.2d 819, 828)); *Hunnewell v. Liberty Mut. Fire Ins. Co.*, 588 A.2d 300, 302 (Me. 1991) ("Under the statute, the insured must first establish coverage. Once coverage has been established, the statute lists six defenses the insurer may raise to challenge its obligation to pay the judgment.  These six defenses are the only ones that may be raised by the insurer in a reach and apply action"); *Michaud v. Mut. Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 789 (Me. 1986) ("We hold that section 2904 contains an exclusive list of defenses available to insurers in reach and apply actions").

whether a temporal deficiency in the notice of cancellation voids entirely or merely delays the cancellation.

The Court does not reach the first issue because it is not decisive. On the one hand, if section 2908's "conclusive proof" of receipt does not cover certified mail, KDT actually received notice on August 13, 2007—fewer than ten days prior to the August 21, 2007 date of cancellation. On the other hand, if section 2908's "conclusive proof" of receipt does cover certified mail, KDT still received notice fewer than ten days prior to the date of cancellation: the certificate of mail would conclusively prove that KDT received notice on August 11, 2007 and the notice of cancellation expressly stated that the policy would be cancelled at 12:01 a.m. on August 21, 2007. *See Morehead-Gillum Decl.* Ex. B.

Maine courts are explicit that section 2908 requires ten *full* days notice. *See State Farm Mut. Auto. Ins. Co. v. Libby*, 655 A.2d 880, 882–83 (Me. 1995) (noting that the Maine Supreme Judicial Court previously concluded that "the statutorily prescribed ten-day notice period should be read to require ten full days, rather than nine full days with cancellation occurring at the beginning of the tenth day"); *Valley Forge Ins. Co. v. Concord Group Ins. Co.*, 623 A.2d 163, 164 (Me. 1993) (holding ineffective a notice of cancellation that was received on January 1 and "stated the effective date of cancellation was January 11 at 12:01 a.m., thereby excluding the entire 10th day less one minute"); *see also* LEE R. RUSS, COUCH ON INSURANCE § 32:49 (3d ed. 2010) ("A notice of cancellation of an automobile liability policy is untimely and of no effect where it allows but 12 full days and one minute of the

13th day, as against the statutory requirement of 13 days' notice in case of service by mail" (citing *Johnson v. Gen. Mut. Ins. Co.*, 271 N.Y.S.2d 428, 430–31 (N.Y. App. Div. 1966)) (cited favorably by *Valley Forge Ins. Co.*, 623 A.2d at 164)). "When calculating time under a notice of cancellation, the first day is to be excluded and the last day is to be included in the computation." *Valley Forge Ins. Co. v. Concord Group Ins. Co.*, 623 A.2d 163, 164 (Me. 1993). Either way Universal's notice did not effectively cancel the policy on August 21, 2007.

Even so, the date KDT received notice of cancellation for non-payment is long before Mr. Adams' February 22, 2008 injury. Thus, the question narrows to whether the insured's receipt of a notice of cancellation that provides a date of cancellation before the running of the full ten days entirely voids the cancellation, or whether it merely moves the cancellation date back to the tenth day after the notice of cancellation was received.

The Court concludes that a temporally defective notice of cancellation for non-payment of premium, which does not provide a full ten days notice before the stated date of cancellation, delays cancellation until the ten day notice period has run from the date of receipt. Thus, here, regardless whether the date of receipt is August 11 or August 13, Universal had effectively cancelled the KDT policy long before Mr. Adams' injury. The Court's conclusion is based upon a close reading of section 2908, which provides that "cancellation . . . is <u>not effective</u> <u>until</u> notice is received by the insured," and that "cancellation may not be effective prior to 10 days after receipt by the insured." According to Universal, the statutory use of the word

"until" suggests some flexibility in the notice requirement, in contrast to the word "unless," which would have mandated strict statutory compliance. Emphasizing the words "not effective," Mr. Adams takes the opposite view, that "[c]ancellation notices that do not meet the requirements of insurance cancellation statutes are ineffective to terminate the insurance contract." *Pl.'s Resp. and Mot.* at 15.

### 1. *Maine Bonding & Casualty v. Knowlton*

The parties located no Maine cases directly on point and both parties draw different lessons from *Maine Bonding & Casualty v. Knowlton*. There, the Maine Supreme Judicial Court considered the validity of a cancellation notice for a homeowner's insurance policy that listed a cancellation date less than the twenty day statutory period. 598 A.2d at 750. The relevant statute provided that "[n]o notice of cancellation of a policy shall be effective *unless* received by the named insured at least 20 days prior to the effective date of cancellation." *Id.* (quoting 24-A M.R.S. § 3050) (emphasis supplied). The homeowners received a cancellation notice from their insurer some time after March 24, 1989, giving notice of the insurance policy's cancellation on April 4, 1989. *Id.* at 749–50. On July 31, 1989, a motorcyclist was injured near the homeowners' property, and in the resulting personal injury suit between the motorcyclist and homeowners, both sought indemnification by the insurer of the homeowners. *Id.*

The *Knowlton* Court held that the insurer's failure to specify an effective cancellation date twenty or more days from receipt was fatal to the notice of cancellation, and thus coverage persisted through the July 31, 1989 date of injury.

*Id.* at 750. The Court was particularly persuaded by the statute's use of the word "unless," which it found "indicative of [the Legislature's] intent to require that insurers comply strictly with the statute's terms in order to effect a policy cancellation. 'No notice of cancellation shall be effective unless . . .' plainly means that a notice can be effective *only if* it complies with the statutory prerequisites." *Id.* (emphasis in original).

Mr. Adams cites *Knowlton*, among other cases, to support his conclusion that "[c]ancellation notices that do not meet the requirements of insurance cancellation statutes are ineffective to terminate the insurance contract." *Pl.'s Resp. and Mot.* at 8. He also notes that "the *Knowlton* court did not say that a different result would be reached if the operative word in the cancellation statute was *until*." *Id.* at 10.

Universal disputes Mr. Adams' interpretation and views *Knowlton* as distinguishable because the statutes use different words, "unless" versus "until." Universal says that for this case, the lesson from *Knowlton* comes from its citation of a Minnesota case, *Ophus v. Tri-State Insurance Co. of Minnesota*, which the Maine Court viewed as "interpreting [a] substantially identical statute[]." *Knowlton*, 598 A.2d at 750. The *Ophus* Court considered the validity of a notice of cancellation in the context of a Minnesota statute requiring that "[n]o notice of cancellation . . . shall be effective *unless* the . . . notice is mailed or delivered by the insurer to the named insured at least 30 days prior to the effective date of cancellation." 392 N.W.2d at 655–56 (emphasis supplied). In ruling that the statute required strict compliance, the *Ophus* Court compared the statute to

another statute that proved that "cancellation . . . shall not become effective *until* 30 days after written notice has been filed . . . ." *Id.* at 656 (emphasis supplied). The *Ophus* Court observed:

> [t]he distinction between the words *until* and *unless* in each statute indicates that the former requires only that the date of cancellation be stayed for a thirty day period before it is effective while the latter requires as a necessary condition of cancellation a notification to an insured thirty days in advance of the date of termination.

*Id.*

Mr. Adams rejects Universal's emphasis on the Maine Supreme Judicial Court's citation of *Ophus*. He notes that the *Knowlton* Court also cited *Pearson v. Nationwide Mutual Insurance Co.*, 368 S.E.2d 406 (N.C. App. 1988), for the same point, and that *Pearson* did not make any distinction between "unless" and "until." Further, Mr. Adams observes that after the Minnesota Court of Appeals issued *Ophus*, the Minnesota Supreme Court issued *Jorgensen v. Knutson*, 662 N.W.2d 893 (Minn. 2003), disagreeing with the conclusion in *Ophus* and ruling that a defective notice only delayed, but did not void, cancellation.

The Court views *Knowlton* as instructive, not dispositive. The Maine Supreme Judicial Court's ruling in *Knowlton* focused heavily on the statutory inclusion of the word "unless." Here, the statute includes different language. At the same time, the Court does not view *Knowlton's* citation of *Ophus* as definitively embracing *Ophus'* distinction between "until" and "unless." *Ophus* is cited to show that other courts have considered similar notice statutes with the same "unless" language and have interpreted that language to require strict compliance. There is no direct mention in *Knowlton* of *Ophus'* discussion contrasting "unless" with

"until," and *Knowlton's* parallel citation of *Pearson*—which did not contain such a contrasting discussion—suggests that *Ophus'* analysis of the two words was not decisive.

## 2.     The Language and Policy of the Statute

The language of the statute is the clearest window to legislative intent. *See Ashe v. Enterprise Rent-A-Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159 ("When interpreting a statute, our objective is to give effect to the Legislature's intent. To determine that intent, we first look to the statute's plain meaning" (internal citations omitted)); *Knowlton*, 598 A.2d at 750 ("The first clue to the legislature's intent is the language it uses"); *Penobscot Nation v. Stilphen*, 461 A.2d 478, 481 (Me. 1983) ("The fundamental objective in interpreting any statute is to determine the intent of the legislature in enacting it and to give effect to that intent"). "When the language chosen by the Legislature is clear and without ambiguity, it is not the role of the court to look behind those clear words in order to ascertain what the court may conclude was the Legislature's intent." *Kimball v. Land Use Regulation Comm'n*, 2000 ME 20, ¶ 18, 745 A.2d 387, 392. "Words must be given meaning and not treated as meaningless and superfluous." *Stromberg-Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566, 569. Furthermore, in interpreting a statute, the Court strives to avoid "absurd, illogical, or inconsistent results." *Kimball*, 2000 ME 20, ¶ 18, 745 A.2d at 392; *accord Pinkham v. Morrill*, 622 A.2d 90, 95 (Me. 1993).

The Court acknowledges that the interpretation of this provision is not crystal clear.  Section 2908(5) uses the term, "effective date," and requires that the "notice must state the effective date of and the reason or reasons for cancellation." 24-A M.R.S. § 2908(5)(A).  In *Knowlton*, construing a similar statute, 24-A M.R.S. § 3050, the Maine Supreme Judicial Court concluded that the term, "effective date," "must refer to the effective date stated in the notice."  *Knowlton*, 598 A.2d at 750; *see Savings & Loan Assoc. v. Tear*, 435 A.2d 1083, 1086–87 (Me. 1981).  The *Knowlton* Court rejected the notion that, even if the notice contained an inaccurate date, the cancellation could be effective by law.  The Court wrote that the statute, "so interpreted, would permit insurers to state any date or none at all on the notice and the cancellation would still take effect 20 days after receipt."  *Id.*  Section 3050 and section 2908, though not identical, are sufficiently similar so that *Knowlton*'s interpretation of "effective date" could apply to section 2908.[6]

At the same time, in one critical respect, the language in section 2908 differs from section 3050; section 2908 provides that "[c]ancellation or nonrenewal is not effective *until* notice is received by the insured . . . prior to 10 days after receipt by the insured of a notice of cancellation," while section 3050 provides that "cancellation of a policy is not effective *unless* received . . . at least 10 days prior to

---

[6] Even though the statutes are similar, there are differences.  Section 3050 addresses only the cancellation of property insurance policies.  It requires at least 20 days prior notice unless the cancellation is for non-payment of premium in which case 10 days prior notice is required.  If the insurer elects to use the certificate of mailing process, section 3050 presumes receipt on the 5th, not 3rd calendar after mailing.  Section 3050 also requires certain specific information be included in the notice.  By contrast, section 2908 applies to all casualty insurance.  24-A M.R.S. § 2908(9).  It provides in all cases for 10 days prior notice.  If the certificate of making process is used, receipt is deemed conclusive 3 days after mailing.  The statute does not mandate specific information be included.  The differences are subtle; however, in general, section 2908 is slightly less rigorous than section 3050, perhaps because of the consumer focus of section 3050.

the effective date of cancellation." 24-A M.R.S. § 2908(5) (emphasis supplied); 24-A M.R.S. § 3050 (emphasis supplied). The Court concludes that the statute's plain language, particularly use of the word "until," allows cancelation of a policy to be postponed until the insured has been afforded the ten day statutory period. As defined, "until" "indicate[s] continuance (as of an action or condition) to a specified time," while "unless" means "except on the condition that." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1370, 1373 (11th ed. 2003). The term implies more flexibility than "unless," which, as noted in *Knowlton*, indicates the Legislature's desire for strict statutory compliance. The Court's interpretation, though different than the one adopted in *Knowlton*, is supported by language in that opinion; distinguishing its holding from other courts, the Supreme Judicial Court noted that "[t]hose courts that have ruled to the contrary were construing different statutory language." *Knowlton*, 598 A.2d at 750.

The difference between "unless" and "until" is consistent with differing purposes underlying the two statutes. The *Knowlton* Court described section 3050 as having a "consumer protection orientation." *Id.* Section 2908 "is part of the Maine Insurance Code chapter that deals with casualty insurance contracts." *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 22, 957 A.2d 94, 101. The Law Court has not addressed whether the "consumer protection orientation" of section 3050 applies with the same force to section 2908. In *Knowlton*, however, the insureds were homeowners; here, the insured is a business

and presumably relatively sophisticated about the need to maintain insurance coverage for its operations.

The Court's ruling is additionally supported by a leading insurance law treatise, which explains the general rule:

> a notice which provides less time than that required by statute or policy, if otherwise sufficient as to form and content, is effective after the lapse of the full period so required. Thus, the notice is effective but is to be read as though it stated the proper date which would be allowed by the policy. . . . The fact that the notice of cancellation does not allow the proper period of time is immaterial where the loss is sustained subsequently to the lapse of what would be the required period of time.

COUCH ON INSURANCE § 32:52. Most relevantly, the treatise gives the example of a notice of cancellation that did not adhere to a ten-day statutory notice requirement. In such an instance, "a cancellation is not ineffective under a 10 days' notice clause merely because 10 days do not elapse between the receipt of the notice and the date fixed for cancellation where no loss occurs until long after such date." *Id.*

The Court concludes that a notice of cancellation that mistakenly provides a shorter notice period than the statutory minimum prescribed in 24-A M.R.S. § 2908(5), but otherwise meets the statutory requirements, delays the effective date of cancellation until the statutory period has run. It does not void the cancellation. *See Martin Mach., Inc. v. The Hanover Ins. Co.*, Civil Action Docket No. CV-88-1274, 1990 Me. Super. LEXIS 64, at *5 (Me. Super. Mar. 9, 1990) (stating that the insurer's "substantial compliance with the regulation's notice requirements does exculpate them from their obligation to cover the plaintiff for the injury to the employee some year and a half after notice had been given").

To hold otherwise would produce incongruous results. First, it would give KDT something for nothing. KDT never paid for insurance coverage for the policy period from July 1, 2007 through February 22, 2008; however, if Mr. Adams' argument is accepted, the law will treat the policy as having been in force during this entire period and KDT will have obtained an undeserved windfall. Second, it would allow ongoing coverage by Universal, which, unaware of its notification error, reasonably believed it effectively cancelled the insurance policy. In fact, under Mr. Adams' argument, Universal would have provided KDT free coverage for the entirety of the insurance policy, through its natural expiration on June 30, 2008. Third, it would reward the delinquent and punish the responsible. As insurance premiums generally reflect the net cost to the insurer, the responsible business that promptly pays for insurance coverage would end up paying for the irresponsible business that does not. Fourth, it would encourage silence from the insured. Section 2908 establishes a process by which an insured who wishes to contest cancellation may challenge it before the Superintendent of Insurance. 24-A M.R.S. § 2908(6). Once an insured receives notice of cancellation, it has forty-five days to request a hearing before the Superintendent and the Superintendent has the authority to order that the policy remain in effect while the hearing is pending. *Id.* If an insured takes advantage of this process, the insurer is informed that the effectiveness of the cancellation is being challenged and that it should take prudent steps to protect its interests. *Id.* Here, there is no evidence that KDT requested a hearing; instead, it apparently sat in silence. Under the conclusion advocated by

Mr. Adams, KDT would receive ongoing coverage despite never taking advantage of the hearing process the statute contemplates. Paradoxically, then, requiring strict adherence to one subsection of the statute would encourage the circumvention of another subsection. Sixth, once delinquent, such an interpretation would foster continued delinquency. Here, there is no evidence that KDT made any effort to pay any premium up to February 22, 2008, and a judicial interpretation that encourages non-payment and discourages late payments seems counterproductive. Seventh, such an interpretation would run counter to the purpose of the notice, which as the Minnesota Supreme Court wrote in *Jorgensen*, "is not to provide a shelter for insureds who make delinquent payments; it is to provide insureds with time to either pay the owed premium or find other coverage." 662 N.W.2d at 903. Finally, the remedy—maintaining insurance for a customer that has not paid for it—is a harsh result for an insurer. The alternative of extending the effective date of the cancellation ten full days from the date of actual receipt still accords the delinquent customer insurance coverage for a period he has not paid for; however, the alternative—extending full coverage until the natural expiration of the policy— seems punitive.

It is true that there are some compelling policy arguments for encouraging insurers to comply strictly with cancellation statutes. First, cancellation statutes are designed to protect the insured and give fair notice of an impending cancellation. Second, insurance policies, like the Universal policy here, protect not just businesses like KDT, but people like Daniel Adams, who have the misfortune of

suffering personal injuries from the actions of an uninsured business's employees. Third, as *Knowlton* points out, the statute requires the insurer to give at least ten days advance notice of the effective date of cancellation and to give a specific date of cancellation, and this interpretation of section 2908 undermines the requirement that the insurer give notice of the effective date insurance coverage will lapse.

On balance, the policy arguments underlying an interpretation in favor of Mr. Adams do not trump the countervailing policy arguments in favor of Universal and the plain meaning of the statute. *See Kimball*, 2000 ME 20, ¶ 18, 45 A.2d at 392 (urging statutory interpretations to avoid "absurd, illogical, or inconsistent results").

To complete the circle, once Universal effectively cancelled coverage for KDT, KDT was no longer insured under the policy. Accordingly, Daniel Adams' reach and apply action against Universal must fail.

## III. CONCLUSION

The Court GRANTS Universal Underwriters Insurance Company's Motion for Summary Judgment (Docket # 13), and DENIES Daniel Adams' Motion for Summary Judgment (Docket # 17).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 18th day of May, 2011